UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
Buffalo Division

ANNETTE FEGGINS,

                     Plaintiff,

                                                 Civil Action No.

v.

                                                 18-cv1217

COUNTY OF NIAGARA,

                     Defendant.


# PLAINTIFF'S MEMORANDUM OF LAW

# IN OPPOSITION TO

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

UNITED STATES DISTRICT COURT ............................................................................... 1
PRELIMINARY STATEMENT ....................................................................................... 1
    A.    GENERAL BACKGROUND ............................................................................... 1
    B.    ACTIONABLE EVENTS ..................................................................................... 2
STANDARD MOTION FOR SUMMARY JUDGEMENT ......................................... 4
    A.    GENERAL STANDARD FOR SUMMARY JUDGMENT ................................... 4
        The Federal Rules .................................................................................. 4
        Burdens of the Parties ........................................................................... 4
        What is a Genuine Material Issue of Fact? ........................................... 5
    B.    ADDITIONAL CLARIFICATIONS OF SUMMARY JUDGMENT STANDARD FOR DISCRIMINATION CASES ........................................................................ 8
ARGUMENT ......................................................................................................................... 9
    A.    RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE AT. UNLAWFUL DISCRIMINATION .................................................................... 9
    3.    Legal Argument ..................................................................................... 9
CONCLUSION ................................................................................................................... 10

**Cases**

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004) ........................ 8
*Belfi v. Pendergast*, 191 F.3d 129 (2d Cir. 1999) ........................................................................ 7
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................... 4, 6
*Coutard v. Mun. Credit Union,* 848 F.3d 102, 109(2d Cir. 2017) .............................................. 10
*Danzen v. Norden Sys.*, 151 F.3d 50 (2d Cir. 1998) .................................................................... 8
*Donahue v. Windsor Locks Bd. of Fire Commissioners*, 834 F.2d 54 [2d Cir. 1987] .................... 5
*Fisher v Vassar College*, 114 F.3d 1332 (2d Cir. 1997) ............................................................. 7
*Gallo v. Prudential Residential Servs. Ltd. Pshp.*, 22 F.3d 1219 (2d Cir. 1994) ..................... 5, 8
*Graziadio v.Culinary Inst. of Am.,* 817 F.3d 415, 424 (2d Cir.2016) ........................................... 9
*Holtz v Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001) ............................................................... 7
*Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1535 (2d Cir. 1997) ................ 5
*McDonnell Douglas Corp. v Green*, 411 US 792, 93 S Ct 1817, 36 L Ed 2d 668 [1973] ............ 7
*Mento v. Potter*, 2012 U.S. Dist. LEXIS 73319, 31 (W.D.N.Y. 2012) ......................................... 9
*Pellegrino v. Cnty. of Orange*, 313 F. Supp. 2d 303, (S.D.N.Y. 2004) ........................................ 9
*Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) .................................................. 9
*Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ............................................................................................................................... 9

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)) .................................................................................................................... 5

*Sanon v. Dep't of Higher Educ.*, 2010 U.S. Dist. LEXIS 27434, 2010 WL 1049264 (E.D.N.Y. Mar. 18, 2010) ........................................................................................................... 6

*Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597 (2d Cir. 2006) ......................... 6

*Skates v. Inc. Vill. of Freeport*, 265 F. Supp. 3d 222, 241 (2017 E.D.N.Y) .................. 9

*St. Mary's Honor Ctr. v Hicks*, 509 U.S. 502 (1993) ..................................................... 7

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981) 7

*Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ........ 5

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................ 4

**Treatises**

*Developments in the Law—Employment Discrimination*, Harv. L. Rev. 1568-1602 (1996) ......... 8

**PRELIMINARY STATEMENT**

This case involves the dismissal from service of a long serving employee of the Defendant. The Plaintiff had worked for the Defendant for some twenty-eight years and had commendations for her service as well as some "write ups."

However, she also had illnesses that came on late in her career. Under her doctor's orders the Plaintiff was told to take time off from her employment which the Plaintiff did under the FMLA.

Upon her return from her last leave under the Family Medical Leave Act (FMLA) the Plaintiff was suddenly subjected to a barrage of criticism about her work. Plaintiff pointed out to the Defendant that these accusations were false, in some cases because she was not at work to make the errors of which she was accused.

As a result of the highly charged atmosphere in which now worked, the plaintiff retired from her employment with the Defendant.

**STATEMENT OF FACTS**

A.  **General Background**

Plaintiff began working for Defendant County of Niagara in 1990 in the Department of Social Services.

Over the years she did her job well but does admit to a total of six "write ups" during her career with the Defendant. However, Plaintiff did work well and got both commendations and a not being part of the CSR (Case Status Review) process. **Exhibit 1**. This meant only fifteen of her cases per month would be reviewed by supervisory personnel.

There was a change in her situation in 2016 however. The Plaintiff now found herself subject to an upsurge in complaints about her work. This surprised the Plaintiff because in

May 2016 she had been given a memo from her supervisor noting that the Plaintiff was doing a good job on the April 2016 case load. **Exhibit 2**. Nevertheless, with the accusation of these errors, the Plaintiff was worried since it appeared agency personnel were now, suddenly, looking through her cases.

On May 25, 2016 the Plaintiff went out on medical leave from which she returned on October 31, 2016. This Plaintiff did, she went to Hawaii for two and a half weeks to visit her daughter. Pl. Tr. 229:19-21, 230:4-19. During this leave, in August 2016, the Plaintiff did apply to the Agency for FMLA time, this request to be made retroactive to May of 2016. The Plaintiff supplied a physician's note and the request was granted.

**B.     Actionable Events**

The Plaintiff did return to work on October 30, 2016. However, on November 9, 2016, less than two weeks after her return from FMLA leave, the Plaintiff was "written up." In fact she was now charged with some eighty-eight (88) errors in her case administration work. The Plaintiff was also charged with Neglect of Duty and Carelessness. **Exhibit 3**. Plaintiff believed she had actually filed a grievance by sending a memo to Mr. Dave Watroba. Trans. 141-144. She also attempted to contact her union representative who never responded. *Id.*

This number of errors was extraordinary given that these events only covered sixteen working days.

Nine of the working days were day between her getting the memo of doing a good job before her medical leave. Seven of the working days were after her return to work on October 30, 2016.

2

Plaintiff was now put on full case review status.  Plaintiff maintains she was the only employee subjected to this level of scrutiny.  However, despite making the same errors she was accused of other employees, even supervisors were not being reviewed.

In addition to be subjected to the higher level of review, Plaintiff had her access to the office limited.  She could not come in early and could only stay until four p.m.

On November 9, 2016 Plaintiff was presented with a Notice of Disciplinary Charges containing eight-eight alleged infractions. Exhibit 3.

In early 2017 other situations came up.  The Plaintiff's case load grew.  Plaintiff notes that cases were assigned by assigned by initials of last name.  Tr. 70:1-13.  154: 3-12.  Plaintiff was also required to respond to emergency calls.  This required the Plaintiff to leave her desk and whatever work she was doing to help with the client who was calling with a problem.

At this same time, in addition to the case load rise and client responsibilities, the Defendant's email system was updated.  Plaintiff found that many of her emails were now not on the system.  Plaintiff maintains that the missing emails included those about the heightened scrutiny she was being subjected to and that no other employees in her section suffered such deletions.  Plaintiff notes this deletion coincides with a write up she had received and about which she had emailed her supervisors to protest.

Through May 2017 Plaintiff continued to deny many of the errors being attributed to her.  When she requested proof in the form of copies of the notifications and memos she was sent the Defendant denied having copies of these memos.

 Plaintiff was given another Notice of Disciplinary Charge on May 11, 2017. **Exhibit 4**. On May 12, 2017 after reviewing cases on her desk and on her task list the Plaintiff noticed

several discrepancies and sent a memo identifying multiple issues to her supervisor including formal protest against the May 11, 2017 Notice of Disciplinary Charge. Exhibit 5. The list of charges was now ninety-one (91).

At this time her workplace was so stressful that the Plaintiff was taken off work by her physician. **Exhibit 6.**

Plaintiff subsequently returned to work in October 2017. However, within a short time she was feeling so anxious and stressed she left work again.

Plaintiff did seek therapy for her stress. **Exhibit 7**.

In February 2018 Plaintiff's physician issued the Plaintiff excuse from work note with no return date. **Exhibit 8**. As a result the Defendant's actions the Plaintiff retired from her position with the Defendant after twenty eight years of service.

## STANDARD MOTION FOR SUMMARY JUDGEMENT

**A.** **General Standard for Summary Judgment**

<u>The Federal Rules</u>

Under Federal Rule of Civil Procedure 56(a) the court must grant summary judgment <u>only</u> if the movant shows that there is no genuine dispute of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The purpose of summary judgment is to terminate factually unsupported claims or defenses. *Id.*

<u>Burdens of the Parties</u>

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

4

"It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

To do this, the Defendant must "foreclose the possibility of the existence of certain facts from which 'it would be open to a jury . . . to infer from the circumstances.'"[1] In determining a motion, the court must resolve ambiguities and draw all reasonable inferences against the moving party (*Donahue v. Windsor Locks Bd. of Fire Commissioners*, 834 F.2d 54, 57 [2d Cir. 1987], *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). "[The Court's] duty, in short, is confined at this point to issue-finding; it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd. Pshp.*, 22 F.3d 1219, 1224 (2d Cir. 1994). If there are "disputes over facts that might affect the outcome of the suit under the governing law," then summary judgment is precluded. *Anderson*, 477 U.S. at 248. Note that the party opposing the motion does not need to present its entire case in order to survive a motion for summary judgment. *Id.* "All that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49.

What is a Genuine Material Issue of Fact?

A fact is material if it is one that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lazard Freres & Co. v. Protective Life Ins. Co*., 108 F.3d 1531, 1535 (2d Cir. 1997) (quoting *Anderson*, 477 U.S. at

---

[1] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)

5

248); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986);*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co*., 221 F.3d 394, 398 (2d Cir. 2000). In *Sanon v. Dep't of Higher Educ*., 2010 U.S. Dist. LEXIS 27434, 2010 WL 1049264 (E.D.N.Y. Mar. 18, 2010).

An issue of material facts exists when the movant cannot conclusively show with admissible evidence that any element of a claim is foreclosed. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

In the vast majority of cases this is based on the movant providing admissible evidence.

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 [1986].

In *Schiano v. Quality Payroll Systems, Inc*., the Second Circuit Court of Appeals noted that regarding the standard of review that "we must construe the evidence in the light most favorable to the plaintiff, drawing all reasonable inferences and resolving all ambiguities in [her] favor. *Schiano v. Quality Payroll Systems, Inc*., 445 F.3d 597 (2d Cir. 2006). The *Schiano* decision specifically noted that "extra measure of caution necessary in affirming summary judgment in a discrimination case because direct evidence of discriminatory intent is rare and such intent must often be inferred from circumstantial evidence found in affidavits

and deposition." *Id.* at 603. In an employment case, where the defendant's motive or intent is at issue, "the trial court must be especially cautious," as "careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." (*Belfi v. Pendergast*, 191 F.3d 129, 135 (2d Cir. 1999)).

The plaintiff then has the opportunity to prove "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). Of course, "to defeat summary judgment within the McDonnell Douglas framework . . . the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." See *Holtz v Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001) at 78 (internal quotation marks omitted). Regardless of whether the plaintiff can prove pretext, she or he bears the ultimate burden of persuasion, and must adduce enough evidence of discrimination so that a rational fact finder can conclude that the adverse job action was more probably than not caused by discrimination. See *St. Mary's Honor Ctr. v Hicks*, 509 U.S. 502 (1993) at 511 (holding that "rejection of the defendant's proffered reasons [for the adverse action] will permit the trier of fact to infer the ultimate fact of intentional discrimination" but does not "compel[]" this inference); *Fisher v Vassar College*, 114 F.3d 1332 (2d Cir. 1997) at 1336 (stating that, after the defendant proffers a legitimate, non-discriminatory reason for the action, "the question becomes the same question asked in any other civil case: Has the plaintiff shown, by a preponderance of the evidence, that the defendant is liable for the

alleged conduct?"). In *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004).

B.  **Additional Clarifications of Summary Judgment Standard for Discrimination Cases**

In cases involving employment discrimination, a court may be cautious in granting summary judgment, as employers rarely leave direct evidence of discriminatory intent. *Gallo*, 22 F.3d at 1224. As such, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.* In discrimination cases the only "evidence available very often centers on what the defendant allegedly said or did." *Danzen v. Norden Sys.*, 151 F.3d 50, 57 (2d Cir. 1998) (citing *Developments in the Law—Employment Discrimination*, Harv. L. Rev. 1568-1602 (1996) (discussing the difficulty in obtaining evidence in discrimination cases and the influence that has had on procedural burdens). "Since the defendant will rarely admit to having said or done what is alleged, and since third-party witnesses are by no means always available, the issue becomes one of assessing the credibility of the parties." *Danzen*, 151 F.3d at 57.

When evidence arrives before the court at summary judgment in such a way, with an issue of credibility potentially attached, "that issue is resolved in favor of the nonmovant." *Id.* "To hold . . . that the nonmovant's allegations of facts are (because 'self-serving') insufficient to fend off summary judgment would be to thrust the courts—at an inappropriate stage—into an adjudication of the merits." *Id.* In the same vein, evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a *disinterested* source and is uncontradicted and unimpeached. *See*

*Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 150-51, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

Finally, Plaintiff notes at the outset that "[O]n all but the rarest of motions for summary judgment, [courts] should simply assume, for purposes of th[e] motion only, that plaintiffs have established a prima facie case." *Mento v. Potter*, 2012 U.S. Dist. LEXIS 73319, 31 (W.D.N.Y. 2012) quoting *Pellegrino v. Cnty. of Orange*, 313 F. Supp. 2d 303, 315 (S.D.N.Y. 2004).

## ARGUMENT

**A.     Retaliation in Violation of the Family Medical Leave At. Unlawful Discrimination**

Plaintiff has shown that she exercised rights protected under the FMLA; (2) that she was qualified for hers position; (3) that suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) in *Skates v. Inc. Vill. of Freeport*, 265 F. Supp. 3d 222, 241 (2017 E.D.N.Y).

The Defendant's actions against the Plaintiff upon her return to work from FMLA were such as to dissuade another person from exercising their rights under the Family Medical Leave Act and indeed, were so severe and pervasive as to cause the Plaintiff to retire early.

3.     Legal Argument

"To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA." *Graziadio v.Culinary Inst. of Am.,* 817 F.3d 415, 424 (2d Cir.2016). Interfering with the exercise of an employee's rights includes "not only refusing to authorize FMLA leave, but

9

discouraging an employee from using such leave." *Potenza at 167.*(citing *29 C.F.R. § 825.220(b)*).

Interference also includes "discharging or in any other way discriminating against any person (whether or not an employee) for opposing or complaining about any unlawful practice under the [FMLA]," *29 C.F.R. § 825.220(a)(2)*, and "induc[ing] employees to waive[] their prospective rights under FMLA." Id. *§ 825.220(d)*.

In order to prevail on an FMLA interference claim, a plaintiff must establish: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA. *Coutard v. Mun. Credit Union,* 848 F.3d 102, 109(2d Cir. 2017)(citation omitted).

Here Ms. Feggins has shown that she exercised her FMLA rights in taking leave in 2016. She has also shown that upon her return from FMLA leave she found her work situation changed with increased workloads, work assignments that could interfere with her primary job duties, limitations on her office hours thus inhibiting her ability to complete assignments, and subjecting the Plaintiff to unwarranted disciplinary actions by Defendant. As noted, Plaintiff has challenged the issue of her reported errors noting for many of them she was not physically present at the time the errors occurred and thus could not have made them.

## CONCLUSION

Plaintiff has shown that because she exercised her rights under the FMLA she was subjected to changes in her work conditions that were so severe as to dissuade anyone from exercising their rights under the FMLA.

Ms. Feggins has shown that there are materials issues of fact regarding her alleged errors in her work allegations formed the basis of her notices of discipline in November 2016 and May 2017. .

Respectfully Submitted,
Plaintiff
By Her Attorneys

| | |
|---|---|
| **s/ Lindy Korn** | **s/ Charles L. Miller, II** |
| LINDY KORN, ESQ. | CHARLES L. MILLER, II, ESQ. |
| Law Office of Lindy Korn, PLLC | Law Office of Lindy Korn, PLLC |
| Attorney for Plaintiff | Attorney for Plaintiff |
| Electric Tower, Ninth Floor | Electric Tower, Ninth Floor |
| 535 Washington Street | 535 Washington Street |
| Buffalo, New York 14203 | Buffalo, New York 14203 |
| 716-856-5676 | 716-856-5676 |
| 716-507-8475 (*facsimile*) | 716-507-8475 (*facsimile*) |
| E-Mail: lkorn@lkorn-law.com | E-mail: cmiller@lkorn-law.com |