UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

====================================

ANNETTE FEGGINS,

                              Plaintiff,

        v.                                                **DECISION AND ORDER**

                                                          18-CV-1217S

COUNTY OF NIAGARA,

                              Defendant.

====================================

## I.       Introduction

This is an employment discrimination action by Plaintiff Annette Feggins, a former Niagara County employee, alleging Defendant County of Niagara retaliated against her for her using leave under the Family and Medical Leave Act, 29 U.S.C. ch. 28, §§ 2601, 2612, 2615, 2601-54 ("FMLA").

Before this Court is the Motion for Summary Judgment of Defendant County of Niagara (or "County") (Docket No. 46).

For the reasons that follow, Defendant's Motion for Summary Judgment (Docket No. 46) is granted, and this case is dismissed.

## II.      Background

Plaintiff generally agrees with Defendant's Statement of Facts (Docket No. 46, Def. Statement; cf. Docket No. 56, Pl. Statement).  Plaintiff differs, however, as to various details alleged in Defendant's Statement.  For example, she denied memoranda she received prior to her May 2016 leave were counseling or disciplinary (Docket No. 56, Pl. Statement ¶¶ 12, 13, 15-18).  Defendant replied that the various details were not material (Docket No. 57, Def. Reply St. ¶¶ 12, 13, 15-18).  Plaintiff also differs with Defendant as

to details of a November 2016 verbal counseling (<u>compare</u> Docket No. 46, Def. Statement ¶¶ 47-48, 50-51, 53, 55 <u>with</u> Docket No. 56, Pl. Statement ¶¶ 47-48, 50-51, 53, 55).  The parties also dispute specific limited facts about Plaintiff's work hours, caseload, and events leading to her retirement in 2018 (<u>compare</u> Docket No. 46, Def. Statement ¶¶ 60, 62, 71 <u>with</u> Docket No. 56, Pl. Statement ¶¶ 60, 62, 71).

Thus, this Court will reference Defendant's Statement (Docket No. 46) below, while noting Plaintiff's specific objections where appropriate.

A.  Plaintiff's Employment with the County Department of Social Services

Plaintiff worked for Defendant Niagara County from January 1990 until her retirement on April 28, 2018 (Docket No. 46, Def. Statement ¶¶ 2, 1).  She worked in the Medicaid unit of the County's Department of Social Services (or "Department") (<u>id.</u> ¶ 4), assigned to the Program Eligibility unit of Medicaid (<u>id.</u> ¶ 5).  There, Plaintiff processed Supplemental Nutrition Assistance Program (or "SNAP") and Home Energy Assistance Program ("HEAP") applications (<u>id.</u> ¶ 6).  SNAP and HEAP are federal benefit programs governed by federal and state laws and regulations which require timely and accurate processing of applications (<u>id.</u> ¶ 7).  Plaintiff's job thus required timely and accurate processing of these applications (<u>id.</u> ¶ 8).

Pertinent to Plaintiff's retaliation allegations is the counseling or supervisory discipline she received during her tenure in the Department.  Defendant notes that Plaintiff had extensive counseling for job performance before May 2016, with discipline starting in 1995 (<u>id.</u> ¶¶ 12-18), despite her allegation that she had "very few 'write ups'" (approximately 6 over 28 years with the Department) (Docket No. 14, Am. Compl. ¶ 11; <u>see also</u> Docket No. 56, Pl. Statement ¶ 12).  Plaintiff disputes the details of these

activities (characterization of "extensive" counseling or whether the memoranda were "counseling" memoranda) (Docket No. 56, Pl. Statement ¶¶ 12-13, 15-18) but she acknowledged that she received these documents (however entitled) (Docket No. 57, Def. Reply St. ¶¶ 12, 13, 15-18).   Plaintiff was counseled and disciplined eight times from July 1995 to May 2016 before her leave (Docket No. 46, Def. Statement ¶ 12).

The Department employed Case Supervisory Review (or "CSR") that allowed Program Eligibility supervisors review only a sample of fifteen applications processed by an employee rather than more rigorous review of the employee's full caseload (see Docket No. 46, Def. Statement ¶¶ 19-20).   Due to her alleged failure to maintain timely and accurate processing of her assigned applications, Plaintiff was not placed on CSR (id. ¶ 19), subjecting her entire caseload to supervisor review.   Plaintiff responds that she did not know why she was not placed on CSR (Docket No. 56, Pl. Statement ¶ 19). Defendant replies that Plaintiff's plea of ignorance is contradicted by her deposition testimony that she signed a counseling memorandum on March 23, 2016 (Docket No. 47, Def. Atty. Decl. Ex. K (Counseling Memorandum to Plaintiff, Mar. 23, 2016, re "Substandard Performance")), which declared she would not be assigned to CSR because she made 50 income related errors and 39 shelter related errors in considering applications from March 2015 to February 2016 (Docket No. 57, Def. Reply St. ¶ 19; Docket No. 47, Def. Atty. Decl. Ex. B, Pl. EBT Tr. at 72-73; id., Ex. K).   That memorandum also stated that other veteran SSW employees were not assigned to CSR (Docket No. 57, Def. Reply St. ¶ 19; Docket No. 47, Def. Atty. Decl. Ex. K).

As conceded by Plaintiff (Docket No. 56, Pl. Statement ¶¶ 21-24), on March 23, 2016, Plaintiff received two counseling memoranda, noting she had 89 errors in handling

applications and that she did not seek time off properly (id. ¶¶ 21-22; Docket No. 46, Def. Statement ¶¶ 21, 22; Docket No. 47, Def. Atty. Decl. Ex. K).  Plaintiff did not grieve these memoranda (Docket No. 56 Pl. Statement ¶ 23; Docket No. 46, Def. Statement ¶ 23).  On May 4, 2016, Plaintiff was given a verbal warning about the proper way to request time off (Docket No. 56, Pl. Statement ¶ 24; Docket No. 46, Def. Statement ¶ 24).

### B.  Plaintiff's 2016 FMLA Leave

Plaintiff took leave from May 25, 2016, through October 30, 2016.  She claims this period was under the FMLA because in August 2016 she applied for FMLA coverage retroactive to May 2016 (Docket No. 14, Am. Compl. ¶ 14).

Referring to its personnel records Defendant parses the types of leave Plaintiff used during this period, including twelve weeks of unpaid FMLA leave from June 20, 2016, until September 9, 2016 (Docket No. 46, Peter Lopes Aff. Ex. B (Hours Analysis Report); Docket No. 46, Def. Statement ¶¶ 25-42, 40 & n.1).  Defendant attributed this leave to a series of medical notes from Plaintiff excusing her absences, and her August 8, 2016, FMLA application which Defendant granted as unpaid FMLA leave retroactive to June 20, 2016 (Docket No. 46, Def. Statement ¶ 38).

On September 5 through October 28, 2016, Plaintiff remained absent on unpaid, non-FMLA sick leave (Docket No. 46, Lopes Aff. Ex. B; see Docket No. 46, Def. Statement ¶¶ 40-41).

### C.  Plaintiff's Return to Work through Her Retirement

Based upon a note from her doctor releasing Plaintiff to resume her duties, Plaintiff returned to work on October 31, 2016 (Docket No. 46, Def. Statement ¶¶ 42, 43).

4

Less than two weeks later, on November 9, 2016, Plaintiff received a verbal notice of discipline for timeliness issues and errors in handling her cases (Docket No. 46, Def. Statement ¶ 44; cf. Docket No. 56, Pl. Memo. at 2).  The parties dispute the importance of these errors (compare Docket No. 56, Pl. Statement ¶ 47 with Docket No. 46, Def. Statement ¶ 47) or whether Plaintiff identified comparable coworkers who faced discipline for similar infractions or whether Plaintiff committed all the infractions (compare Docket No. 56, Pl. Statement ¶ 48 with Docket No. 46, Def. Statement ¶ 48).  Defendant replies that Plaintiff admitted to 66 of the work errors cited in the notice and she did not offer evidence that other alleged errors were attributable to other employees (Docket No. 57, Def. Reply St. ¶ 47).  Defendant acknowledged that 25 of the 91 cited errors occurred during Plaintiff's leave (id. ¶ 48).  Plaintiff could not resolve her cases under the new procedure enacted days before Plaintiff started her leave (id.).

Plaintiff now contends she was placed on full case review status and she claims she was the only employee in her unit subject to this degree of scrutiny (Docket No. 56, Pl. Memo. at 3).  She also complained that she could not come in early or stay late in the office (id.).  On March 3, 2016, however, Plaintiff was advised to leave the office at the end of her shift unless she was conducting county business.  She was told not to procrastinate at the end of her shift before going to gym because a supervisor had to remain if she stayed late (Docket No. 47, Def. Atty. Decl. Ex. U; Docket No. 47, Def. Statement ¶ 60; see Docket No. 57, Def. Reply St. ¶ 60).

Admitting she did not grieve this discipline (Docket No. 46, Def. Statement ¶ 49; Docket No. 47, Def. Atty. Ex. B, Pl. EBT Tr. at 141, 143), Plaintiff contends she believed she had filed a grievance by sending a memorandum to the former manager of labor

5

relations, David Watroba, and by contacting her union representative (Docket No. 56, Pl. Memo. at 2; Docket No. 56, Pl. Statement ¶¶ 49, 50, 55; Docket No. 47, Def. Atty. Decl. Ex. B, Pl. EBT Tr. at 143-44; Docket No. 57, Def. Reply St. ¶ 50).

Meanwhile, in January 2017, the County updated its email system resulting in Plaintiff losing access to her past emails for two or three weeks (Docket No. 46, Def. Statement ¶ 56). Plaintiff then complained to her supervisor that her old emails were deleted, and Defendant promptly provided her access to her emails (id. ¶¶ 57, 58). Plaintiff noted the coincidence of the updated email and her loss of access to the disciplinary write up (Docket No. 56, Pl. Memo. at 3).

Plaintiff contends her caseload increased in 2017 and she was made responsible for answering emergency calls that required her to leave her desk to attend to a client's emergency (Docket No. 56, Pl. Memo. at 3) but (as Defendant observed) Plaintiff did not produce evidence of additional work (Docket No. 46, Def. Statement ¶ 62; Docket No. 57, Def. Reply St. ¶ 62). She continued to have errors attributed to her and in May 2017 she noticed discrepancies and sent a memorandum identifying them and challenging a May 11, 2017, Notice of Disciplinary Charge (Docket No. 56, Pl. Memo. at 3-4; cf. Docket No. 46, Def. Statement ¶ 68; Docket No. 56, Pl. Statement ¶ 68 (admitting Defendant's Statement); Docket No. 47, Def. Atty. Decl. Ex. W). Plaintiff refused to sign the memorandum (Docket No. 47, Def. Atty. Decl. Ex. W at page 316 of 371).

Plaintiff next complained of work-related stress and, upon medical advice, she took medical leave (Docket No. 14, Am. Compl. ¶ 24; see Docket No. 56, Pl. Memo. at 4). Plaintiff last worked for Niagara County on December 5, 2017, calling in sick or not

reporting to work or submitting a medical note from that date until she retired (Docket No. 46, Def. Statement ¶¶ 81-85).

In January 2018, Plaintiff applied for retirement which Defendant accepted (id. ¶¶ 86-87).  On January 31, 2018, Plaintiff rescinded her retirement application, stating she wanted to return to work (id. ¶ 87).  Instead of returning to work, Plaintiff submitted medical documentation on February 8, 2018, that advised that she could not return to work indefinitely (id. ¶ 88), with Plaintiff remaining on medical leave (id. ¶ 89).  On April 28, 2018, Plaintiff retired (id.).  She claims that she is currently unable to resume work (id. ¶ 106).

### D.  Proceedings

Plaintiff filed complaints with the Equal Employment Opportunity Commission ("EEOC"), New York State Division of Human Rights, and the New York State Workers' Compensation Board alleging hostile work environment and age and sex discrimination based upon the November 2016 discipline and the results from changes in the email system (Docket No. 46, Def. Statement ¶¶ 90-92, 96-100).  Plaintiff alleged to the Workers' Compensation Board that she experienced unfair treatment since March 2016 and endured heightened scrutiny by supervisors since 2015 (Docket No. 46, Def. Statement ¶ 93).  The Workers' Compensation Board denied her claim for stress from the November 2016 discipline and the change in email system, concluding that the personnel decisions as to her were lawful (Docket No. 46, Def. Memo. at 1-2; Docket No. 46, Def. Statement ¶¶ 94-95).  None of these administrative complaints alleged FMLA retaliation (Docket No. 46, Def. Statement ¶ 101).

Plaintiff testified that she lodged a complaint with the New York Attorney General's office in November 2019 (after filing this action) alleging FMLA retaliation, contending she believed that from February 2017 her supervisors began assigning her work with intentionally incorrect information (id. ¶ 102; Docket No. 47, Def. Atty. Decl. Ex. B, Pl. Tr. at 224-25).  Neither party reported the results (if any) from her complaint to the Attorney General.  Otherwise, Plaintiff did not complain internally to Niagara County or to any other governmental agency about FMLA retaliation (Docket No. 46, Def. Statement ¶ 103).

On November 1, 2018, Plaintiff filed and served her Complaint (Docket No. 1; see Docket No. 46, Def. Statement ¶ 104).  Defendant (then named "County of Niagara, Department of Social Services") moved to dismiss (Docket No. 4) because Plaintiff named the Department as a party and insufficiently served process.  This Court granted the Motion to Dismiss but also granted leave to amend to name the proper Defendant (Docket No. 13).

Plaintiff then amended the Complaint (Docket No. 14), deleting reference to the Department as a Defendant.  There, Plaintiff alleges that the County retaliated against her for invoking her FMLA rights in 2016 (id.).  She alleges that she showed that she exercised her rights under the FMLA; that she was qualified for her former job; that she suffered an adverse employment action (heightened work supervision and discipline, temporary loss of her old emails); and the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent (id. ¶ 26, citing Potenza v. City of N.Y., 365 F.3d 165, 168 (2d Cir. 2004); Skates v. Incorp. Village of Freeport, 265 F. Supp.3d 222, 241 (E.D.N.Y. 2017)).  In her subsequent deposition, however, Plaintiff could not articulate any individual within the County she believed retaliated against her or

a factual basis for her belief that she was subjected to FMLA retaliation (Docket No. 46, Def. Statement ¶ 105; Docket No. 47, Def. Atty. Decl. Ex. B, Pl. EBT Tr. at 83-89, 228-29, 255-61; see Docket No 56, Pl. Statement ¶ 105 (admitting Defendant's statement)). She concluded that Defendant's actions following her return from FMLA leave "were such as to dissuade another person from exercising their rights under" the FMLA (Docket No. 14, Am. Compl. ¶ 27) and were so severe and pervasive as to cause Plaintiff's early retirement (id.).

Niagara County answered the Amended Complaint (Docket No. 19).

Following discovery, Defendant moved for summary judgment (Docket No. 46)[1]. With Plaintiff's responding papers (Docket No. 56) and Defendant's reply (Docket No. 57), the Motion was deemed submitted without oral argument.

### III.   Discussion

A.  Applicable Standards

1.  Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505,

---

[1]In support of the County's Motion, the County submitted its Statement of Material Facts, Docket No. 46; its Attorney's Declaration with exhibits, Docket No. 47; the Affidavit of H.R. Director Peter Lopes with exhibits, Docket Nos. 46, 49, Amended Ex. F to Lopes Aff.; the Affidavit of Plaintiff's social services supervisor Julie Eberly, with exhibits, Docket No. 46; and its Memorandum of Law, Docket No. 46.  The County replied with its Reply Memorandum, Docket No. 57; its Attorney's Reply Declaration with exhibit, the second page of the September 5, 2007, counseling memorandum, Docket No. 57, Exhibit NN; see Docket No. 46, Def. Atty. Decl., Ex. F (memorandum missing second page); and Reply to Plaintiff's Statement, Docket No. 57 ("Def. Reply St.").

In opposition, Plaintiff submitted her responding Statement; her attorney's Declaration with exhibits; and Memorandum of Law, Docket No. 56.

91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.

The movant seeking summary judgment has the burden (through pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials, Fed. R. Civ. P. 56(c)(1)) to demonstrate the absence of a genuine issue of material fact, Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion," Addicks v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of fact for trial," Anderson, supra, 477 U.S. at 249.  "Assessment of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment," Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment, Anderson, supra, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party, Anderson, supra, 477 U.S. at 252.

10

This Court's Local Civil Rules require that movant submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," W.D.N.Y. Loc. Civ. R. 56(a)(1), and the opponent to submit a response to each numbered paragraph in the movant's statement, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.

### 2.  Family and Medical Leave Act

An employee is entitled to twelve weeks of unpaid medical leave, 29 U.S.C. § 2612(a)(1)(D).  It is unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" invocation of an employee's FMLA leave rights, 29 U.S.C. § 2615(a)(1); cf. id. § 2615(a)(2) (also unlawful for an employer to discharge or "in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter"); Woods v. START Treatment & Recovery Centers, Inc., 864 F.3d 158 (2d Cir. 2017) (FMLA retaliation claim stated under § 2615(a)(1) rather than § 2615(a)(2).  "To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA," Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 424 (2d Cir. 2016) (Docket No. 56, Pl. Memo. at 9), with interference including discouraging an employee to use such leave, Potenza, supra, 365 F. 3d at 167 (citing 29 C.F.R. § 825.220(b)) (id. at 9-10).

As an employment discrimination claim without overt evidence of discriminatory conduct, retaliation under the FMLA is governed by the burden shifting analysis of

McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);
Graziadio, supra, 817 F.3d at 429 (Docket No. 46, Def. Memo. at 5); Potenza, supra,
365 F.3d at 168.

To prove retaliation under the FMLA absent evidence of overt discrimination (as
here), Plaintiff first needs to make out her prima facie case that she exercised rights under
FMLA; that she was qualified for her position; that she suffered an adverse employment
action; and that "the adverse employment action occurred under circumstances giving
rise to an inference of retaliatory intent." Potenza, supra, 365 F.3d at 168 (Docket No. 56,
Pl. Memo. at 9).

An adverse employment action is the same for FMLA's anti-retaliation provision as
for Title VII, that is whether an employer is likely to dissuade a reasonable employee in
Plaintiff's position from exercising her legal rights, Millea v. Metro-North R. Co., 658 F.3d
154, 164 (2d Cir. 2011) (applying standard enunciated in Burlington N. & Santa Fe R.R.
v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)) (Docket No. 46, Def.
Memo. at 6).

An inference of retaliatory intent can be shown when a "causal connection exists
between the plaintiff's protected activity and the adverse action taken by the employer,"
Donnelly v. Greenburgh Cent. Sch. Dist. No. 7, 691 F.3d 134, 152 (2d Cir. 2012) (Docket
No. 46, Def. Memo. at 11).  That connection is manifested from "very close" temporal
proximity between the protected activity and adverse action, id. at 152; see Clark County
Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

Excessive monitoring at work is not adverse employment action, Turley v. ISG Lackawanna, Inc., 803 F. Supp.2d 217, 239 (W.D.N.Y. 2011) (Skretny, C.J.) (citing cases) (Docket No. 46, Def. Memo. at 8).

While a Title VII retaliation action requires a plaintiff also prove that the retaliation was the but-for cause of the employment action, University of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), the Second Circuit held in Woods v. START Treatment & Recovery Centers, Inc., supra, 864 F.3d 158, that a jury instruction of "but-for" causation for FMLA retaliation is erroneous, at 168-69.

Plaintiff alleges that she retired early due to work-related stress (Docket No. 14, Am. Compl. ¶ 27). If the employment action is the result of the voluntary resignation or retirement, "then the requirement of an adverse employment action is not satisfied," Singh v. New York State Dep't of Tax. & Fin., 911 F. Supp.2d 223, 234 (W.D.N.Y. 2011) (Curtin, J.) (citing, e.g., Miller v. Praxair, Inc., 408 F. App'x 408, 410-11 (2d Cir. 2010) (summary Order, voluntary resignation not amounting to constructive discharge or hostile work environment did not constitute an adverse employment action), cert. denied, 564 U.S. 1038, 131 S.Ct. 3067, 180 L.Ed.2d 888 (2011)). In determining whether a resignation is voluntary or forced due to employment discrimination, courts "will look to whether the circumstances amounted to 'constructive discharge' or 'hostile work environment,'" Singh, supra, 911 F. Supp.2d at 235 (citations omitted).

Constructive discharge occurs "when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced to an involuntary resignation," Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983) (internal quotation marks and citation omitted); Singh, supra, 911 F. Supp.2d

at 235.   Plaintiff thus needs to show "that the employer 'intentionally creates a work atmosphere so intolerable that [the employee] is forced to quit involuntarily.'   Terry v. Ashcroft, 336 F.3d 128, 151-52 (2d Cir. 2003)," Miller, supra, 408 F. App'x at 410.   This inquiry is objective, whether "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign," Pennsylvania St. Police v. Suders, 542 U.S. 129, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004).   It is an extremely high burden to establish constructive discharge, De La Pena v. Metropolitan Life Ins. Co., 953 F. Supp.2d 393, 419 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98 (2d Cir. 2014) (summary Order) (Docket No. 46, Def. Memo. at 20; see Docket No. 57, Def. Reply Memo. at 9).   The standard is "a demanding one because 'a constructive discharge cannot be proven merely by evidence that an employee . . . preferred not to continue working for that employer' or that 'the employee's working conditions were difficult or unpleasant.'   Spence v. Maryland Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993)," Miller, supra, 408 F. App'x at 410.

A hostile work environment exists if the workplace was permeated with discriminatory intimidation that was "sufficiently severe or pervasive to alter the conditions of her work environment" and there was a basis to impute the conduct creating the hostile environment to the employer, Gorzynski v. JetBlue Airways, 596 F.3d 93, 102, 103 (2d Cir. 2010); Singh, supra, 911 F. Supp.2d at 236, based upon the totality of the circumstances comprising the hostile environment claim, Singh, supra, 911 F. Supp.2d at 236, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere occasional utterance; and whether it is

14

unreasonably interferes with an employee's work performance," <u>Gorzynski</u>, <u>supra</u>, 596 F.3d at 102; <u>Singh</u>, <u>supra</u>, 911 F. Supp.2d at 236.

If Plaintiff makes out her prima facie case, the burden shifts and Defendant must demonstrate legitimate, nondiscriminatory reasons for its actions; if Defendant does so, the burden shifts back again and Plaintiff then must show that Defendant's proffered explanation is pretextual, <u>Graziadio</u>, <u>supra</u>, 817 F.3d at 424.

B. Parties' Contentions

Defendant argues that Plaintiff failed to allege FMLA retaliation (Docket No. 46, Def. Memo. at 5-17).  Applying <u>McDonnell Douglas</u> burden shifting analysis, Defendant first states Plaintiff fails to state a prima facie case and, even if she did, Defendant had non-discriminatory reasons for the complained-of actions and these reasons lack pretext (<u>id.</u> at 6-16, 16-19).  Defendant denies that Plaintiff's retirement was retaliatory constructive discharge (<u>id.</u> at 20-24).  Even if this Court finds that Plaintiff asserted a FMLA retaliation claim, Defendant argues Plaintiff is no longer entitled to back or front pay because Plaintiff retired (<u>id.</u> at 24; <u>see</u> Docket No. 57, Def. Reply Memo. at 10).

Defendant points to Plaintiff's history of poor performance before she took FMLA leave in 2016 (Docket No. 46, Def. Memo. at 8-9, 13, 16), to her Workers' Compensation Board complaint where she contended that Plaintiff received enhanced scrutiny since 2015 (<u>id.</u> at 15), and to Plaintiff being told before her leave that she could no longer stay at work after office hours (<u>id.</u> at 7 n.1).  Weeks after returning from leave she received a verbal warning and removal from CSR due to errors in her work (<u>id.</u> at 7-9, 13).  Defendant contends the counseling and discipline were unrelated to Plaintiff having taken FMLA leave; Plaintiff does not make a temporal connection between her 2016 leave and her

2017-18 employment activities (id. at 9-10, 12-13, 14) or her voluntary retirement in April 2018, months after FMLA leave (id. at 11).  Plaintiff also fails to connect her FMLA leave with the changes in the email system or her assignment of more emergency calls (id. at 14-15).

Plaintiff responds that there are issues of material fact (namely whether she committed the errors she was accused of perpetrating following her FMLA leave) that preclude granting Defendant summary judgment (Docket No. 56, Pl. Memo. at 10, 11). Plaintiff claims that some of the purported errors that led to the November 2016 discipline occurred while she was on FMLA or other leave (id. at 2; Docket No. 56, Pl. Statement ¶ 48).  She argues that retaliation for using FMLA includes discouraging employee use of that leave (Docket No. 56, Pl. Memo. at 9-10), Potenza, supra, 365 F.3d at 167.  She contends that changes in her workload, assignments, limitation on her hours at work, and being subjected to unwarranted disciplinary actions were all in retaliation for her using FMLA leave (id. at 10).

C.  Retaliation for Using FMLA Leave

The material facts in this Motion are not in dispute.  The parties dispute some details that are not important to deciding the Summary Judgment Motion.  For example, the number of errors Plaintiff allegedly committed that led to the November 2016 notice of discipline (cf. Docket No. 46, Def. Statement ¶¶ 44, 47) is not material in determining whether Defendant used this discipline to retaliate against her for claiming FMLA leave weeks before.

Plaintiff argues that she was under FMLA leave from May to October 2016 but only one segment was paid FMLA leave and another segment of that period was unpaid FMLA

leave.  She contends that Defendant retaliated against her for using FMLA leave, even though Defendant's alleged retaliatory actions occurred months later.

On the elements for the prima facie case for FMLA retaliation, Plaintiff established that she exercised her rights under FMLA, but only for the twelve-weeks of unpaid FMLA leave between June 20 to September 9, 2016.  Plaintiff's qualification for her job generally is not questioned.

What is questioned is whether Plaintiff suffered an adverse employment action as well as whether the circumstances of that action gave rise to an inference of Defendant's retaliatory intent.

### 1.  Adverse Employment Action

Plaintiff suggests several actions were adverse employment actions in retaliation for her taking FMLA leave.  They included heightened scrutiny following her return to work, deletion of work emails following upgrades in the County's email system, being barred from staying at the office during off hours, and the stress from work that led to her forced retirement.

The actions cited by Plaintiff do not interfere with, restrain, or deny the exercise of or the attempt to exercise FMLA leave rights, hence did not violate 29 U.S.C. § 2615(a)(1) as retaliation for exercising FMLA rights.  These actions also would not discourage a reasonable employee in Plaintiff's circumstances from using FMLA leave when necessary.

### a.  Actions after Plaintiff's Return from FMLA Leave

From May 31, 2017, through November 28, 2017, Plaintiff sought medical leave or was on an unexcused absence (see Docket No. 46, Def. Statement ¶¶ 74, 81-85; Docket No. 46, Lopes Aff. ¶¶ 10-14, Exs. G-H; Docket No. 49, Lopes Ex. F, Hours Analysis

17

Report, Jan. 1, 2016, to Dec. 31, 2017) despite the changes in her workload and responsibilities, the temporary loss of access to her email, and being instructed to leave the office after her shift ended. Plaintiff retired while on her last medical leave (see Docket No. 46, Def. Statement ¶¶ 81-85, 88-89). This leave was not FMLA leave because Plaintiff had not worked the requisite 1,250 hours during 12 months prior to seeking leave (Docket No. 46 Def. Statement ¶ 74; see Docket No. 56, Pl. Statement ¶ 74, admitting Defendant's Statement). Plaintiff does not argue that this leave was misclassified or that she was denied FMLA leave that she otherwise deserved as a retaliatory adverse employment action. She has not shown that Defendant interfered with FMLA benefits or discouraged her from seeking that leave. Furthermore, if Defendant had objections to her 2016 use of FMLA leave and sought to retaliate for that, allowing Plaintiff medical leave (and some instances unexcused leave, see Docket No. 49, Lopes Ex. F) belies any retaliatory intent

Viewing the evidence in the light most favorable to Plaintiff as opponent to the Motion for Summary Judgment, Plaintiff fails to show she suffered an adverse employment action due to retaliation for her taking FMLA leave. Considering each alleged adverse action in turn, the record includes evidence of Plaintiff receiving supervisory counseling before and after taking leave. In one of her complaints to the state Workers' Compensation Board, she claimed she received unfair treatment since March 2016 (see Docket No. 46, Def. Statement ¶ 93; Docket No. 56, Pl. Statement ¶ 93 (admitting Defendant's statement), predating Plaintiff taking FMLA leave. Although she was not on the less supervised CSR throughout the period cited in this action and was under more scrutiny than coworkers under the CSR program, Plaintiff has not shown any

connection between her taking FMLA leave and her supervisory counseling and her heightened supervision.

Before and after her leave, Plaintiff was disciplined for how she handled her cases and the manner she sought leave.  She has not established that others were not subject to similar heightened scrutiny.  To the contrary, Defendant asserts that other veteran coworkers also were not placed on CSR (Docket No. 46, Def. Statement ¶ 19).  Plaintiff did not deny this statement (Docket No. 57, Def. Reply St. ¶ 19).  Moreover, this Court has held that excessive monitoring by supervisors is not an adverse employment action, Turley, supra, 803 F. Supp.2d at 239.

Plaintiff also did not allege FMLA retaliation to Defendant, her union, the EEOC, or New York State Division of Human Rights, or the Workers' Compensation Board.  In one complaint before the New York State Division of Human Rights, she alleged that Defendant retaliated against her for filing an EEOC complaint (Docket No. 47, Def. Atty. Decl. Ex. GG; Docket No. 46, Def. Statement ¶ 96; see Docket No. 56, Pl. Statement ¶ 96 (admitting Defendant's Statement)).  However, she did not allege FMLA retaliation there or in her filings with other agencies.  In a second New York State Division of Human Rights complaint, she alleged retaliation by computer sabotage for filing an earlier complaint (Docket No. 47, Def. Atty. Decl. Ex. JJ; Docket No. 46, Def. Statement ¶ 98; see Docket No. 56, Pl. Statement ¶ 98 (admission)), again without mention of any FMLA retaliation.  After filing this action, Plaintiff said she filed a complaint with the New York State Attorney General's office alleging FMLA retaliation (Docket No. 46, Def. Statement ¶ 102); there is nothing in this record of the Attorney General's action on Plaintiff's

complaint.  Clearly, Plaintiff knows how to raise retaliation claims administratively, but she did not assert a FMLA claim until after filing this action.

Next, Plaintiff argues that her loss of access to her old email also was retaliatory. She has not shown, however, that the changes in the Niagara County email system in 2017 (and her temporary loss of access) is related to Plaintiff's leave taking.  She has not established that the County changed her email or temporarily deprived her access to her old email due to her taking FMLA leave.  The upgrade in the email system and her provisional loss of access to emails in the old system (which she later regained access to) took place months after she returned from leave.  This upgrade was global and applicable to all county employees, with other employees also complaining about the change (Docket No. 47, Def. Atty. Decl. Ex. KK, New York State Division of Human Rights Determination, Sept. 7, 2018, at page 360 of 371).  Plaintiff only supposes that this email situation was proximate to her November 2016 discipline and that the lost emails were about her contesting the discipline (Docket No. 56, Pl. Memo. at 3).  As noted above, Plaintiff has not connected the November 2016 discipline to her FMLA leave.  Plaintiff's supposition regarding her January 2017 loss of her old emails and her leave during the summer of 2016 is not enough to establish retaliation for taking FMLA leave.  The temporary (and later remedied) loss of her old emails is but a minor annoyance that would not deter a reasonable employee from asserting their FMLA rights, see Hasenwinkel v. Mosaic, 809 F.3d 427, 434 (8th Cir. 2015); see Burlington N., supra, 548 U.S. at 68.

Other post-leave events as well are unrelated to her taking FMLA leave.  Plaintiff lacks evidence connecting her increased caseload and required coverage of client emergency calls to her taking FMLA leave.  As Defendant observed (Docket No. 46, Def.

Statement ¶ 62; Docket No. 57, Def. Reply St. ¶ 62), Plaintiff has not quantified the changes in her workload and responsibilities or connected those changes to her taking leave in 2016.  She only makes a general assertion of increased and changed workload in January 2017 after her November 2016 discipline, or "grievance" as she termed it (Docket No. 56, Pl. Statement ¶ 62).  She testified that taking the emergency calls of clients required her to leave her desk to address the clients and that she received more emergency calls while also having a larger caseload than other workers (Docket No. 47, Def. Atty. Decl. Ex. B, Pl. EBT Tr. at 154).  Plaintiff also has not shown how this increased workload was retaliatory for her invoking her FMLA leave rights.  Plaintiff has not shown how this increase is related to her claiming FMLA leave months before.  These changes after she returned from leave are petty slights or minor annoyances, Burlington N., supra, 548 U.S. at 68, and would not deter reasonable employees from exercising their FMLA rights, Hasenwinkel, supra, 809 F.3d at 434.  If anything, Plaintiff's claim (like her temporary loss of her email) arose after she contested the November 2016 discipline (id.) and is different from retaliation for asserting her FMLA rights.

As for the directive that Plaintiff leave the office at the end of her shift, it was issued in March 2016, months before Plaintiff took leave (Docket No. 46, Def. Statement ¶ 59; see Docket No. 56, Pl. Statement ¶ 59 (admitting allegation in Defendant's Statement); Docket No. 47, Def. Atty. Decl. Ex. U).  Although she now argues that she intended to stay after hours to work (see Docket No. 56, Pl. Memo. at 10), Defendant produced the March 2016 email advising Plaintiff to leave at the end of her shift unless she was conducting county business after hours (Docket No. 47, Def. Atty. Decl. Ex. U; Docket No. 46, Def. Statement ¶ 60; Docket No. 57, Def. Reply St. ¶ 60).  Plaintiff thus could

have stayed late if she worked.  Instead, she sought to stay after for personal reasons. As such, this prior directive to leave the office has no connection to her subsequently taking FMLA leave.  Moreover, she neither alleges that the departure policy was reinforced after her return from leave nor that this directive is at all connected with her claiming leave.

Contrast these claimed adverse actions with the retaliation claim in Singh, supra, 911 F. Supp.2d at 240-41, where plaintiff Deeksha Singh alleged her employer, Erie Community College, retaliated against her for taking FMLA leave by adjusting her work hours to start an hour earlier.  She then complained that this shift increased her day care costs and physically she could not get going an hour earlier due to her medical condition, id. at 241.  In the context of that action, Judge Curtin held that the one-hour schedule change (otherwise not likely to dissuade a reasonable employee) was a materially adverse employment action, id. (quoting Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010)).

Plaintiff Feggins here has not asserted how the changes in her duties, increased workload and scrutiny, temporary loss of access to emails, and the directive to leave the office at the end of her shift were material, adverse actions to her.  These events were all innocuous to a reasonable employee.  While Singh pinpointed specific harms to her from the shift of time, see Singh, supra, 911 F. Supp.2d at 241, Plaintiff here merely alleges general work-related stress.  This is not sufficient to state the existence of a material adverse action.

b.  Retirement as Constructive Discharge or Product of Hostile
Work Environment

Plaintiff Feggins claims that her retirement was compelled due to work-related stress and was an example of an adverse employment action.  She did not specify whether her retirement was constructive discharge or the product of a hostile work environment.

i.  Constructive Discharge

Weighing the circumstances leading to Plaintiff's retirement, see Singh, supra, 911 F. Supp.2d at 235 (for Title VII claim), she has not established that her voluntary retirement in April 2018 was constructive discharge due to retaliation for taking FMLA leave in June 2016.  Although Plaintiff alleges her 2018 forced retirement (two years before she vested with full retirement benefits, see Docket No. 56, Pl. Atty. Decl. Ex. 7, at pages 162, 165, 154), she retired months after returning from her FMLA leave in October 2016.  She makes no connection between retaliation for taking FMLA leave and her retirement.

As for her claimed work-related stress, the record here is limited surrounding Plaintiff's medical condition during her last days at the Department.  Plaintiff argues she took leave in 2016 due to workplace stress (Docket No. 56, Pl. Memo. at 4).  She then claims that she began to feel anxious after returning from the 2016 FMLA leave (Docket No. 56, Pl. Memo. at 4).  Plaintiff does not claim that her stress came from Defendant's objection to her taking FMLA leave.  She does not allege that the stress in 2016 is the same as the stress she endured in 2017-18.

She cites to portions of her medical record to establish that she sought therapy for her stress (Docket No. 56, Pl. Memo. at 4, citing Docket No. 56, Pl. Atty. Decl. Ex. 7).  In

her exhibited medical record, Plaintiff submitted two notes, one in July 2016 and the other in February 2018, from her doctor, Dr. Sonjoy Singh, excusing her from work due "to illness/injury," without specifying what that illness or injury was (Docket No. 56, Pl. Atty. Decl. Exs. 6, 8).

Review of Plaintiff's medical record (id. Ex. 7) relative to the period of October 2016 (when Plaintiff returned to work) through April 2018 and her retirement contains only four relevant reports discussing Plaintiff's anxiety (id. at pages 6, 8, 162-66, 153-57; id., Ex. 8). On January 28, 2018, Plaintiff had a psychological evaluation by psychologist Dr. Jennifer Cain, Ph.D., of Behavioral Medicine Associates.  Plaintiff reported to Dr. Cain experiencing "harassment and discrimination on going on a large scale" at work from January 2016 through November 2017 when she stopped working.  She also noted her leave in May to October 2016 (id., Ex. 7, at page 6; see also id. at page 8 (follow up evaluation Feb. 19, 2018).) and that she sought mental health care since August 2016 "to address symptoms of psychological distress resulting from the discrimination and harassment incidents at work" (id. at page 6).  Dr. Cain concluded that Plaintiff's symptoms were "causally and directly related to the harassment and discrimination she experienced at the workplace" (id. at pages 6, 7; see also id. at page 10 (Feb. 2018 follow up)).

In her psychiatric assessment by Dr. Brian Joseph for the New York State Comptroller on February 21, 2018, on Plaintiff's contention was that she could not return to work due to harassment in the workplace and resultant stress.  Plaintiff reported that she experienced harassment and scrutiny at work, causing her "significant anxiety and distress" leading to her complaints to the EEOC and the State Human Rights Division (id.

at pages 164, 162).  As a result of her stress, Plaintiff claimed she was on leave from May to November 2016.  Plaintiff returned to work, but then resumed leave, eventually returning to work in December 2017.  She then claimed renewed harassment and left work again.  (Id.)  Plaintiff left work as of February 2018 seeking a disability retirement (id. at page 165).  Dr. Joseph then opined that Plaintiff "appears to have a legitimate concern regarding harassment in the workplace for unclear reasons" (id., emphasis added).

In a March 28, 2018, evaluation by Dr. Raphael Leo of the University Psychiatric Practice of the Erie County Medical Center, Plaintiff reported longstanding stress from work, that she had a larger caseload than other employees and she was under greater scrutiny (id. at page 153).  Although noting that after returning from her FMLA leave in 2016 Plaintiff was under greater scrutiny (including having her desk relocated in the middle of the office and a feeling of being monitored), she reported this greater scrutiny was coupled with the finding that she made mistakes in processing applications.  There was no mention of any retaliation for her taking FMLA leave (id. at pages 153. 154).  Nor did Plaintiff explain during this session why her cases were more closely scrutinized, although Dr. Leo opined it may have been due to Plaintiff's processing errors (id. at page 153).

This is the extent of Plaintiff's proffered medical record after the FMLA leave. Nowhere do these psychological reports mention FMLA retaliation.  Plaintiff unsuccessfully alleged age, race, and hostile work environment claims.  The harassment she discussed in this medical record could well refer to those allegations of harassment. The record also describes other potential stressors aside from retaliation for her taking

25

FMLA leave, such as increased supervision at work, changes in her duties and workload, as well as financial stress during her unpaid FMLA leave period (id. at 153, 162).

Plaintiff announced that her reasons for retirement were "financial."  She later noted the cost of health insurance (Docket No. 47, Def. Atty. Decl. Exs. Z, AA) as well as work-related stress (id., Ex. Z).  Absent from her reasons was any claim of retaliation for using FMLA leave months before.

Viewing this record in light most favorable to Plaintiff, no rational jury could find that Plaintiff has established that her voluntary retirement was a constructive discharge for FMLA retaliation.  Her ostensible reasons for retirement were financial (to retain health coverage in retirement) or seeking relief from work-related stress.  Her workplace harassment claims—Plaintiff's stated source of stress—were general.  Some arose before she took FLMA leave.  She did not allege that these claims included harassment following her taking 2016 FMLA leave.  Cf. Singh, supra, 911 F. Supp. 2d at 235-36 (denying proof of constructive discharge for Title VII gender and nationality discrimination where plaintiff resigned to accept position with another agency).

As Defendant argues (Docket No. 46, Def. Memo. at 21-22, 24), Plaintiff retired nineteen months after her FMLA leave ended, precluding constructive discharge based on any temporal relationship between retaliation for use of that leave and her retirement (id. at 22, citing cases).  Prior to retirement, Defendant granted Plaintiff additional medical and unexcused leaves (Docket No. 57, Def. Reply Memo. at 9-10; see Docket No. 47, Lopes Aff. Ex. F), including the final leave she was on when her retirement became final.

Plaintiff's post-leave scrutiny and discipline, even if it led to work-related stress and her early retirement, does not constitute constructive discharge, Spence v. Maryland Cas.

Co., 995 F.2d 1147, 1156 (2d Cir. 1993) (Docket No. 46, Def. Memo. at 21).  An employer like Defendant may insist upon high work standards and if an employee like Plaintiff develops stress-related illness "from the demands of [her] voluntarily undertaken position or from criticisms of [her] performance, and as a result determines that health considerations mandate [her] retirement, [this] does not normally amount to a constructive discharge by the employer," id.  Plaintiff has not shown her situation was an unusual case that converted her voluntary retirement into constructive discharge.  As such, a jury could not find that Defendant deliberately made things so unpleasant for Plaintiff that a reasonable person would have felt compelled to retire, see Singh, supra, 911 F. Supp.2d at 235 (Title VII claim); Spence, supra, 995 F.2d at 1156-57 (Age Discrimination in Employment Act claim).

### ii.  Hostile Work Environment

Alternatively, Plaintiff has not established that her work environment was hostile due to her exercise of FMLA rights.  On the totality of circumstances present in this record and taking her allegations as true, cf. Singh, supra, 911 F. Supp.2d at 236, Plaintiff has not shown a work environment permeated with discriminatory intimidation regarding taking FMLA leave that was so severe or pervasive as to alter Plaintiff's conditions of employment to the point of a forced retirement.

In Singh, Judge Curtin considered alleged gender and nationality harassment but held that Singh failed to establish that a hostile work environment led to her resignation, id.  Here, the issue is narrower; whether Defendant created a hostile work environment against employees who presumed to use FMLA leave.

Plaintiff fails to establish any instances of discrimination based on FMLA retaliation.  If one counts the incidents she cites, these are episodic (a notice of discipline in November 2016; the temporary loss of old emails; additional duties with emergency calls; the instruction received before she took her leave about departure at the end of her shift).  These instances did not physically threaten or humiliate Plaintiff, and they are not continuous and concerted to be deemed pervasive.  In sum, Plaintiff fails to establish that her voluntary retirement was the product of a hostile work environment from retaliation for exercising her FMLA rights.

Therefore, Plaintiff's voluntary retirement was not an adverse employment action, Singh, supra, 911 F. Supp.2d at 234.

### 2.  Inference of Retaliatory Intent

Plaintiff fails to assert any adverse employment action to state a claim for FMLA retaliation.  Further, she has not shown circumstances that give rise to an inference of retaliatory intent.  The supervision and counseling on errors that occurred before and after her taking leave do not.  Most certainly, the counseling that occurred before Plaintiff's leave could not be retaliatory for her later taking leave.  As for those actions that occurred after Plaintiff returned from leave, no evidence links the leave to her discipline.  A reasonable employee in Plaintiff Feggins' circumstances, therefore, would not be dissuaded from exercising his or her FMLA rights merely by post-leave criticism and/or enhanced supervision of their work, see Millea, supra, 658 F.3d at 164; Turley, supra, 803 F. Supp.2d at 239 (but cf. Docket No. 14, Am. Compl. ¶ 27).

There is no inference of retaliatory intent or motive from these alleged employment actions.  Telling here is the fact that, after taking FMLA leave in 2016, Plaintiff took

28

medical and other unexcused leave in late 2017 (up to the date of her retirement) without objection from Defendant.

### 3.  Prima Facie Case

Considering the above circumstances after her October return to work, under McDonnell Douglas burden shifting, Plaintiff has not met her burden for establishing a prima facie case for adverse employment action to state a claim for FMLA retaliation.  She also fails to show circumstances that give rise to a reasonable inference of retaliatory intent.  The actions cited by Plaintiff are unrelated to her taking FMLA leave.  Thus, Defendant's Motion for Summary Judgment (Docket No. 46) is granted.

Lastly, this Court need not reach Defendant's arguments that, under McDonnell Douglas, Defendant has a non-discriminatory reason for its actions as to Plaintiff because Plaintiff has not established an adverse employment action.  Similarly, this Court need not address Defendant's alternative argument that, due to her retirement, Plaintiff was precluded from back pay, front pay, or damages for emotional distress (cf. Docket No. 46, Def. Memo. at 24-25; Docket No. 57, Def. Reply Memo. at 10).

Therefore, Defendant's Motion for Summary Judgment (Docket No. 46) dismissing this case is granted.

### IV.    Conclusion

The Family and Medical Leave Act addresses inadequate job security for employees compelled to take leave for medical and other family reasons, see 29 U.S.C. § 2601(a)(4) (congressional findings for Act); Singh, supra, 991 F. Supp.2d at 239.  That Act grants employees the right to up to 12 weeks of unpaid leave and bars employer retaliation or interference with the exercise of that right, Singh, supra, 991 F. Supp.2d at

239 (citing 29 U.S.C. §§ 2612(a)(1)(C), 2615(a)(1)).  This statute has a limited focus, ensuring employee access to medical and other family leave without employer hinderance.  Unlike Title VII and its ban on workplace harassment, the FMLA does not invite exploration of workplace slights after an employee returns from leave unless the employee establishes the purported adverse activities either were in retaliation for invoking FMLA rights or were to prevent future exercise of those rights.

Plaintiff here has not established that her former employer, Niagara County, retaliated against her for using unpaid FMLA leave.  Defendant's actions that she claims were adverse and retaliatory—additional scrutiny and discipline on her caseload, additional duties in responding to clients' emergency calls, denial of after working hours access to the office, and temporary loss of old email during the change in the email system—are not.  Plaintiff  also fails to connect her voluntary retirement to Defendant's actions.

Therefore, Defendant Niagara County's Motion for Summary Judgment (Docket No. 46) is granted, and this case is dismissed.

**V.      Orders**

IT IS HEREBY ORDERED, that Defendant Niagara County's Motion for Summary

Judgment (Docket No. 46) is GRANTED,

FURTHER, the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:          November 19, 2021
                Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge

31